RUTH REALTY COMPANY, INCORPORATED, PLAINTIFF-APPELLANT, v. NORTHERN INSURANCE COMPANY OF NEW YORK, DEFENDANT-RESPONDENT.

RUTH REALTY COMPANY, INCORPORATED, PLAINTIFF-APPELLANT, v. NORTHERN ASSURANCE COMPANY, LIMITED (OF LONDON), DEFENDANT-RESPONDENT.

Argued October 17, 1933—Decided February 2, 1934.

For the plaintiff-appellant, *Norbury C. Murray* and *Robert H. McCarter.*

For the defendant-respondent, *Arthur T. Vanderbilt* (*Nathan L. Jacobs,* on the brief.)

The opinion of the court was delivered by

KAYS, J. These are three appeals from judgments of nonsuit entered in the Supreme Court. The cases were tried together at the Essex Circuit before a Circuit Court judge who ordered nonsuits at the close of the plaintiff's case.

There were three separate actions brought by the Ruth Realty Company, Incorporated, the appellant here; two against the Northern Insurance Company of New York and one against the Northern Assurance Company, Limited, of London on fire insurance policies for loss of a building belonging to plaintiff. The provisions of the policies varied in some particulars. One of the policies was for the insurance of rents and the other three were for damages by fire to the building. The building had been used for the manufacture of candy at a time before any of the present policies were issued. Following this the building was used for the manufacture of lamp stands and then for the storing of radio tubes. On July 1st, 1929, about twenty-six days before the fire occurred, the building was rented to the Polasco Chemical Company. The building was a one-story brick and tile building on the south side of Branford street, in Newark, New Jersey.

The main argument before this court is whether the trial judge erred in granting nonsuits in all three cases. The policies with one exception provided, by riders annexed thereto, that the insurance should be in effect "while occupied for tenant manufacturing purposes situate 28-32 Branford street, Newark, New Jersey. (This policy excludes coverage of foundations and cost of excavations below lowest floor line. It is understood and agreed privilege is granted to do such work and use such materials, articles and supplies as are usual to occupancies stated.)

Privilege is granted for existing communications and for the above described buildings to be used and occupied for the purposes designated above and for other purposes not more hazardous, to make additions, alterations and repairs without limit of time, this insurance to cover thereon, to work at all hours, to effect other insurance, to cease operations for not exceeding sixty consecutive days at any one time in any one year, and vacant for not exceeding two consecutive months at any one time in any one year, to use gas, electricity and steam for light, heat and power, and to do such work and to use such materials, supplies, articles and apparatus as are usual to existing occupancies above stated and others not more hazardous." The Northern Assurance, Limited, policy is for the sum of $5,000 and ran from August 14th, 1927, covering said building. The policy of the Northern Insurance Company of New York was for the sum of $3,000 and ran for three years from July 6th, 1927, and covered said building. The policy of the Northern Assurance Company for $6,000 which covered said building was dated December 28th, 1928, and was then extended from January 23d, 1929, for one year. This policy contained the words "for manufacturing candy, situate 28-32 Branford street, Newark, N. J.," instead of the words "for tenant mfg. purposes." Another policy for $1,400 made by the Northern Insurance Company of New York was for rent insurance and read: "1400. On the rental value of the brick building situate 28-32 Branford St., Newark, N. J., occupied for tenant manufacturing purposes," and then contained the privilege mentioned above which was inserted in all four of the policies. In other respects the policies were practically the same. It appears that during a portion of the time when these policies were assumed to be in effect the building was not used for manufacturing purposes but was used for the storage of radio tubes. However, the plaintiff leased the property to the Polasco Chemical Company on July 1st, 1929, by a written lease. In and by this lease the Polasco Chemical Company agreed that it would not conduct any more hazardous business or occupation than was then being carried on in said building, and that the

premises would be used for the mixing of chemicals that are not an extra fire hazard and are not explosive. All policies were New Jersey standard form and modified by the rider annexed thereto and above referred to.

On July 27th, 1929, the building was damaged by fire. Defendant below claimed that the damage to the building was due to an explosion. There was evidence to the effect that the damage was caused by fire and that no explosion occurred. On July 26th, Mr. Ruth, who was the president of the company which owned the building, inspected the premises and found two men working there. At this time there was no operation or evidence of operation taking place in the building. His testimony disclosed that there was a vat or mixer which contained a paddle wheel and a pipe leading to the top of this vat and one from the bottom thereof to the sewer. There were in the building several empty steel drums. There was no firing apparatus in the building and, according to his testimony, it was apparent that the apparatus which was to be used for the mixing of chemicals was not in use at that particular time and evidently had not been entirely installed. On the morning of the fire Mr. Ruth arrived at the premises in which was located his office, a very short distance from the building which was damaged by fire. He observed a man or two in the building in question and they appeared to be moving a steel drum. Shortly afterward he looked through a window of his office and noticed that the premises were on fire along the edge of the roof and also that the adjoining premises were on fire. He called the fire department. When he returned from this he saw that the roof had fallen in. The fire lasted two or three hours. He heard no explosion although he was present during the entire fire. It seems from the fact that the building was leased for a purpose not more hazardous than that for which it was being used at the time the lease was signed and from his testimony that no mixing of chemicals was taking place the day before the fire occurred and that no manufactured goods or evidence of the manufacture of goods appeared in the building immediately before the fire, the jury might well infer that the building

was not being used for any purpose more hazardous than tenant manufacturing purposes and that the Polasco Chemical Company had not completed the installation of their apparatus or begun the manufacture or mixing of chemicals at the time the fire occurred. After the tenant leased the building, if it was to be used for manufacturing purposes, that is, the mixing of chemicals as provided in the lease, it would require the tenant sometime to move and install the necessary apparatus for such purposes. It, therefore, appears that a *prima facie* case, as far as the use of the building was concerned, was made out by the testimony and the inferences which might well be drawn therefrom. Respondent claims that this proof was a condition precedent. If it was, we think that the evidence disclosed sufficient proof to take the case beyond a nonsuit in this respect.

The next point urged for sustaining the nonsuit by the respondent is that the policies were void by reason of the cessation of the use of the building for manufacturing purposes during part of the time the policies were in effect and for more than sixty days. It is admitted that the buildings were not used for manufacturing purposes for a period of more than sixty days during the time the policies were in effect. Appellant contends, however, that as the buildings might be used for other purposes than tenant manufacturing purposes which were not more hazardous, the clause of the policy which provided that the building might be "vacant for not exceeding two consecutive months at any one time in any one year" must apply to the policy in case the building was not used. We think this is correct. Under the terms of the policies the buildings might be used for other purposes than tenant manufacturing purposes as set forth in the policies, and the policies further provided that privilege was granted to cease operations for not exceeding sixty consecutive days at any one time in any one year. An examination of the evidence discloses that the building was not vacant for two months at any one time in any one year. While the building was used for the storage of radio tubes from January 15th, 1929, to May 31st, 1929, it does not appear that this use was

more hazardous than that of tenant manufacturing purposes or candy manufacturing purposes. As the proofs stood at the close of the plaintiff's case the jury could have found that the privilege of ceasing operations for a period not to exceed sixty days had not been violated.

The next point made by the respondent is that the plaintiff failed to furnish verified plans and specifications after the same were demanded. An examination of the pleadings discloses that the complaint alleged generally the fulfillment of all the conditions required to be performed by the plaintiff under the policies of insurance. The defendant failed to plead the nonperformance of the above mentioned allegation and it, therefore, was not available to the defendant as a defense at the trial. *Ottawa Tribe* v. *Munter,* 60 *N. J. L.* 459.

There seems to be no merit in the contention that plaintiff refused to submit to arbitration because the arbitration agreement submitted by defendant was not in proper form as it contained a provision that the appraisers should separate the amount of damage caused by fire from the amount of damage caused by explosion and it was not conceded by the plaintiff that an explosion had taken place. We, therefore, think that the plaintiff rightfully refused to act upon the arbitration agreement submitted.

We see no merit in the other contentions made by the respondent to sustain the nonsuit.

We are, therefore, of the opinion for the reasons above set forth that the judge erred in granting the nonsuit as to the policies involved in the above suits and the judgments under review are reversed to the end that a *venire de novo* may issue in each suit.

*For affirmance*—None.

